1          UNITED STATES DISTRICT COURT
2          EASTERN DISTRICT OF WASHINGTON

3  UNITED STATES OF AMERICA,        )
                                    )
4            Plaintiff,             )    No. 09-CR-089-RHW
                                    )    October 7, 2009
5  vs.                              )    Spokane, Washington
                                    )
6  TIMOTHY A. SHELLY,               )    Transcript of:
                                    )    Pretrial Conference/Motion
7            Defendant.             )    Hearing
   ─────────────────────────────────)

8

9          BEFORE THE HONORABLE ROBERT H. WHALEY
              SENIOR UNITED STATES DISTRICT JUDGE

10

11  APPEARANCES:

12  For the Plaintiff:        Stephanie J. Lister
                              Assistant United States Attorney
13                            P.O. Box 1494
                              Spokane, WA 99210-1494

14

15  For the Defendant:        Amy H. Rubin
                              Federal Defenders of Eastern
16                            Washington and Idaho
                              10 North Post Street, Suite 700
17                            Spokane, WA 99201

18

19

20

21
   Official Court Reporter:   Debra Kinney Clark, RPR, CSR
22                            United States District Courthouse
                              P.O. Box 700
23                            Spokane, WA 99210
                              (509) 458-3433
24
   Proceedings reported by mechanical stenography; transcript
25  produced by computer-aided transcription.

WITNESS INDEX

ON BEHALF OF THE PLAINTIFF:                    DR        CR

    Norma Loza                                 6         8

1     (October 07, 2009; 10:00 a.m.)

2          THE COURTROOM DEPUTY:  We have United States of

3     America v. Timothy Shelly, Case No. CR-09-089.  Time set for

4     pretrial conference and motion hearing.

5          THE COURT:  Let me say something before you start,

6     Ms. Lister.  I want to summarize what I have.

7          I've got the tapes of the arguments, but it doesn't seem to

8     me that any evidence was admitted in front of the magistrate

9     except the pretrial services reports.  So if there was something

10    else, I need to be aware of that.  And then in the government's

11    memorandum, there are a number of factual allegations made about

12    the particular case, pages 3 through 6; and I don't know if the

13    magistrate had the underlying reports that established those

14    facts.  It would seem to me that if those facts are being

15    considered that I should have some record of that.  Maybe she

16    had it; maybe she didn't.  But it seems to be -- I want to --

17    I've got an indictment.  I've got the pretrial services report.

18    And then I don't think there was any other evidence.  So I just

19    want to make sure that the record I have is complete.

20         Now you can speak.

21         MS. LISTER:  Your Honor, I apologize first for filing

22    that memorandum so late.  What happened was I didn't receive it

23    through the ECF immediately.  But then when I looked at the

24    file -- usually, there's a complaint or a search warrant that

25    has the factual basis for the magistrate to use as a basis for

determination.  That was not present in this case.  And you're
correct.  There was not testimony presented.  I presented a
proffer factually, but there was no testimony from an agent.
Thus, I filed this memorandum with the facts and have
Special Agent Loza prepared to testify to those facts if the
Court is not satisfied with the proffer.

THE COURT:  Well, I'm satisfied with the proffer if
the defense doesn't contest it.  But I -- I'm supposed to do
this de novo, and then I'm -- and the Circuit has got to have
some record if it goes up.  And I'm just trying to establish the
factual record, which -- so it's not whether I'm satisfied.
It's whether the defense is satisfied with the proffer.  And if
they aren't, then I would hear from the FBI agent because the
heart of your argument is the facts; and it seems to me that
that's something that needs to be in the record.  So I don't
know.

MS. LISTER:  And the other --

THE COURT:  Do you object to the facts as they're set
out in the government's brief?

MS. RUBIN:  I guess the concern I have, Your Honor, is
that I may have some questions for the agent.  And it's not that
I object to the facts, but I'm just concerned that we haven't
had a chance to cross-examine her.  And there may be some
questions that we have that may go to some of the factors that
the Court needs to consider with regard to Mr. Shelly's release

1  or not.

2        THE COURT:  Put her on the stand and let her tell us

3  about it, and you can cross-examine.

4        MS. LISTER:  Agent Loza?

5        MS. RUBIN:  And, Judge, just for the record, I just

6  want to make sure that you were also aware that there were two

7  declarations filed.

8        THE COURT:  I've read them.

9        MS. RUBIN:  Okay.

10       THE COURT:  I've read everything you filed, and I've

11  read the government's memo that I got this morning.  And I've

12  listened to the tapes.  I didn't listen to all of the tape.  I

13  listened to your arguments, and then I listened to some of

14  Ms. Lister's.  And then -- and I -- but the reason I didn't have

15  to finish it was because it was clear there was no evidence.  So

16  I was going to hear the arguments anyway.  So as soon as I knew

17  that I wasn't going to hear any testimony, then I concluded I

18  would listen to your arguments today.

19    Okay.  Come on up.

20       THE COURTROOM DEPUTY:  Ma'am, would you please raise

21  your right hand?

22  (WITNESS, NORMA LOZA, called as a witness on behalf of the

23  plaintiff, having first been duly sworn, testified as follows:)

24       THE COURTROOM DEPUTY:  Okay.  Would you please have a

25  seat?

1      Would you please state your name; and spell your first and

2 your last name for the record, please.

3           THE WITNESS:  Norma Loza.  N-o-r-m-a.  Last name,

4 L-o-z-a.

5           MS. LISTER:  And, Judge, I'm going to shorten this up.

6           THE COURT:  Please.

7                      DIRECT EXAMINATION

8 BY MS. LISTER:

9 Q    Agent Loza, have you had an opportunity to review the

10 memorandum provided to the Court in opposition to the

11 defendant's appeal; specifically, the facts on pages 3, 4, 5,

12 and 6 of that memorandum?

13 A    Yes, I have.

14 Q    And do you have an opinion as to whether or not there are

15 any incorrect statements or statements that you believe need to

16 be clarified for the Court?

17 A    The only statement that should be clarified is in April of

18 2007, I wasn't assigned the case.  I was just assisting on the

19 matter.  I actually started in Spokane in April of 2007.  I was

20 in the Los Angeles division prior to that.

21 Q    So on page 5 of the memorandum, at lines 4 and 5, I wrote:

22 "Unfortunately, due to a number of events, staffing and resource

23 issues, FBI Special Agent Loza was not assigned to this case

24 until April of 2007."  And you're saying that's incorrect?  You

25 came to Spokane in April of 2007?

1  A    Right.  I started working on the matter, but I wasn't

2  assigned the case.

3  Q    Okay.  And that -- I have one other question, Agent Loza.

4  In this memorandum, it doesn't indicate whether or not there was

5  any contact with the -- between the defendant and the victim

6  after the Labor Day weekend in 2005.  Could you provide any more

7  details with respect to that for the Court?

8  A    Yes.  When I interviewed the victim on January 10th of

9  2008, she had informed me that after Detective Sharp of the

10  Ferry County Police Department -- or -- Sheriff's Department --

11  spoke with her that he asked her if she could contact the

12  defendant in this matter and try to get him to come back out to

13  Washington so they could arrest him.  So she actually -- they

14  did have contact.  And she actually tried to get him back out.

15  But then she felt bad.  And about a month after that, she

16  informed him that law enforcement had requested that he come

17  back out so they could arrest him.

18  Q    Now, when you say, "she informed him," who are you

19  referring to?

20  A    The defendant.

21  Q    Okay.

22  A    The defendant.

23  Q    So the victim told the Defendant Shelly that law

24  enforcement had initiated that call or had asked her to call?

25  A    Right.

1   Q     Okay.

2   A     Right.  For her to contact him.  So then they -- they still

3   kept contact from the date of the occurrence all the way up

4   until I think April of 2007.  She actually moved.  And we didn't

5   know this, but she actually had moved from Washington to Indiana

6   in January of 2007.  And during that time, they were still in

7   contact -- telephone, e-mails.  And I believe in April of 2007,

8   he had stated that he wanted to go to Indiana and meet with her;

9   but that meeting never occurred.  And then also, she found a new

10  boyfriend at that time and requested that he no longer contact

11  her; but he still tried to contact her.  And she had to have her

12  boyfriend actually call him and say to leave her alone.  So they

13  had contact until mid -- at least mid 2007.

14  Q     So in mid of 2007, how old would the victim have been?

15  A     Probably about 15.

16           MS. LISTER:  No further questions, Your Honor.

17           THE COURT:  All right.

18                     CROSS-EXAMINATION

19  BY MS. RUBIN:

20  Q     Agent Loza, just so I have a time frame here, in September

21  of 2005, was that when this investigation started with maybe

22  local law enforcement in Michigan and also in Ferry County?

23  A     Yes.

24  Q     Okay.  And that was, you said, September of '05,

25  approximately?

1  A    Yes.

2  Q    Okay.  And then you became involved with the case in 2007?

3  A    That's correct.

4  Q    Okay.  But the case had been -- there had been an ongoing

5  investigation?

6  A    Well, I think they referred it to us at the end of 2005.

7  And the individual who it was referred to took the hard drive,

8  started the initial process of the case, and then he was

9  assigned other matters -- high-profile cases, part-time

10  supervisor.  There just wasn't enough man resources.  And he was

11  a cyber specialist.  And so --

12  Q    So local law enforcement referred the case, at the end of

13  2005, to FBI?

14  A    Yes.

15  Q    Okay.  And between -- you're obviously familiar with this

16  case.  Is that fair to say?

17  A    Yes.

18  Q    Okay.  Between local law enforcement receiving this

19  information about this case until Mr. Shelly's arrest --

20  A    Uh-huh?

21  Q    -- he has not had any contact with law enforcement in terms

22  of arrest, has he?

23  A    No.  Not to my knowledge.

24  Q    Okay.  And the contact in January of 2008 was at the

25  request of law enforcement for the victim to contact Mr. Shelly?

1    A    There was no request in 2008 for him to --

2    Q    Well, I guess --

3    A    -- for her to contact.  That was in 2005.  That was in

4    September of 2005.  Right after -- yeah.

5    Q    I guess I'm confused, then.

6    A    Sure.  No problem.

7    Q    I thought you said -- I thought you said approximately

8    January 10th of 2008, law enforcement asked if the victim could

9    contact Mr. Shelly.

10   A    If I said that, that was incorrect.

11   Q    Okay.  Maybe I misunderstood.

12   A    Sure.  They asked that in September of 2005, right after

13   the incident occurred --

14   Q    Oh.  Okay.

15   A    -- to get him to come back.

16   Q    Okay.  He didn't come back?

17   A    No, he did not.

18   Q    Okay.  And --

19   A    She felt bad and then told him about what law enforcement

20   had stated.

21   Q    But he didn't come to Washington?

22   A    That's correct.

23   Q    Okay.  And he didn't go to Indiana?

24   A    That's correct.

25   Q    Okay.  And he has not been arrested between 2005 and his

1  arrest for this charge?

2  A     That's true.

3  Q     Okay.  And law enforcement, obviously, in the last five

4  years, has been aware of these charges?

5  A     Since --

6  Q     Of these pending charges?

7  A     Since -- yeah.  The charges were -- yeah.

8  Q     Okay.  And Mr. Shelly -- has he resided in Michigan this

9  whole time?

10 A     I -- to the best of my knowledge.

11 Q     Well, at the time of the -- at the time the incident

12 occurred, was he a resident of Michigan?

13 A     Yes.

14 Q     And was he arrested in Michigan?

15 A     Yes.

16 Q     And between 2005 and his arrest, do you have any

17 information to suggest he had lived outside of Michigan?

18 A     No.

19        MS. RUBIN:  Okay.  Your Honor, I don't believe I have

20 any further questions.

21        THE COURT:  All right.  Thank you.

22        THE WITNESS:  Uh-huh.

23        MS. LISTER:  Nothing further.  Thank you, Your Honor.

24        THE COURT:  All right.  Then I'm going to consider as

25 additional factual record the facts beginning on line 14 of

line 3 (sic) of the government's brief, entitled United States'
Memorandum in Opposition to Defendant's Appeal of Magistrate's
Order of Detention, through line 23 on page 6 of the same brief.
All right.

     MS. RUBIN:  Your Honor, I don't know if the Court
wants me to just start at the beginning; but I'm happy to.  And
just so the Court knows, I have Angela Shelly and Tammy Shelly
available by phone if --

     THE COURT:  Let me tell you -- let me tell you -- I've
read it all, and I've listened to your arguments -- all of them.
I just haven't heard all of Ms. Lister's.  But the concerns that
I had -- I find I probably release more people than others, but
that's the way I read the law.  The record I have right now is
the offense conduct did not end as it looked like in 2005, but
there were additional communications that were part of the same
conduct of contacting the victim.  The proffer indicates a
very -- what I would call a serious case, with significant
allegations of wrongdoing that look like they have -- you
know -- sentences of substantial time.  I think it says
15 years.  And it's not just a case like I have a lot of them,
which are someone that's obtaining and receiving child
pornography, but it's one that looks like it's created child
pornography and then actually has a physical victim.  So it
seems to me that, from the cases I've had, that the nature and
circumstances of the offense, to me, are a significant factor.

1 And then the weight of the evidence seems to be not as

2 significant, but it seems to be significant that there is a

3 significant weight.

4     The problem I then have is -- on the record I have -- is

5 your client lied to the probation department about drug use.

6         MS. RUBIN:  I --

7         THE COURT:  Now, let me finish.  You want to contest

8 that, but you haven't.  Now --

9         MS. RUBIN:  I can't.

10         THE COURT:  Well, I'm not sure that's true.  I mean,

11 you may not be able to contest it in some ways.  But, I mean, if

12 you really wanted to contest it, you could probably find some

13 information about how often that lab is right or wrong, for

14 instance.  If you have tests that are done contemporaneous in

15 his employment, you could put that in.  All you've done is

16 reference it in an argument, but I don't have any evidence of

17 that.  So -- and I'm going to finish anyway before you interrupt

18 me.

19     And so I have a situation where I have a serious crime that

20 concerns me; I have a circumstance where you want to release him

21 where there are other children and this conduct appears to have

22 continued up into 2007; and what I perceive to be a lie about

23 drug use.  And so those things don't give me any confidence in

24 your client, and that's what would cause me to not disturb the

25 magistrate's order.  So -- and my conclusion was, after I'd

1   listened to you, if you want to challenge this drug thing, do

2   it.  I mean, you may or may not be successful.  But you proffer

3   that there's -- you know -- other drug tests.  I don't know when

4   they were or how often they were or what they tested for, and I

5   don't know how often this lab is correct or not, and I don't

6   know anything about the person that did the test or the test

7   procedures.  But all those things you can investigate if you

8   think it would convince me that that test is unreliable, and I

9   would listen to you.  But there's no evidence of it, is my

10  point.  That's why I asked:  What's the evidence in this case as

11  opposed to argument?

12          MS. RUBIN:  Well -- and let me just respond to the

13  Court's concern about the drug test.  The problem that I have,

14  which is -- you know -- so -- it's so unusual in this case

15  because we don't have the same type of drug testing that we do

16  here.  The probation officers do a preliminary test, which I

17  believe is just a stick; and it comes back either presumptive

18  positive or not.  They then send that test out for further

19  testing.

20      The problem that I had in this case was that there's

21  actually a lab that I guess the probation officer or office uses

22  in the District of Eastern Michigan that is actually contained

23  within their own office.  They don't keep samples.  So there's

24  no -- there's no method for me to retest the sample that was

25  provided by Mr. Shelly because they don't keep samples for

1  further testing.  I verified that with the Federal Defenders in

2  Michigan as well, and that is the case.  I talked to the lab

3  technician, and that is the -- that's the information that she

4  provided to me.

5      I certainly would be happy to investigate the test that

6  Mr. Shelly provided with his employment; but, of course, these

7  tests may be over a year old.  I mean -- so unfortunately, I

8  don't know that that's going to be -- you know -- something that

9  the Court can look at -- whether or not he has a drug use

10  problem or not.  I mean, our position is that he doesn't and

11  that --

12      THE COURT:  I'm not so concerned about having a drug

13  use problem as lying.  So --

14      MS. RUBIN:  But --

15      THE COURT:  -- whether or not -- you know -- he

16  continues to be tested for it, the record I have right now is he

17  lied.

18      Now, you have a means to contest it.  It might not be the

19  best because you can't contest a sample.  But that doesn't mean

20  that the book is closed.  It just means you have a harder time.

21  And I don't know what the evidence is.  You may call back there,

22  and they say, hell, we send these things out all the time; and

23  we're wrong half the time.  I don't know.  I don't know.  But

24  you are making an argument to me that's not in the record

25  factually.  So I'm -- you know --

1    MS. RUBIN:  I guess I'm just responding to the Court's

2  questions.  I'm sorry if --

3    THE COURT:  I know.  But I'm trying to respond to you

4  that -- there's more than one way to challenge something, and

5  you know that.  And it's not just -- and I don't have a factual

6  record to support what you're saying.  So that's the problem I

7  have.

8    MS. RUBIN:  Then obviously we will address that, Your

9  Honor.  But I don't think it's -- I think that it's -- to say

10  that my client lied when we don't have an opportunity to contest

11  that --

12    THE COURT:  You have an opportunity.  It's just you

13  haven't taken it.

14    MS. RUBIN:  Well, if there's no sample to challenge,

15  there's no way to retest that sample.

16    THE COURT:  Well, I've explained that.

17    MS. RUBIN:  And that's the whole --

18    THE COURT:  I mean, if that's your position, I'm

19  finding it's not credible that there's not some way for you to

20  determine whether or not I should not believe the test report

21  other than your word that I shouldn't.  So -- you know --

22    MS. RUBIN:  Then we'll have maybe a declaration from

23  the technician that says that they're -- they throw their

24  samples away.

25    THE COURT:  I -- I -- I accept that.  You don't need a

1  declaration.  I assume that that sample is not available.

2        MS. RUBIN:  But even -- even if -- you know.  Even

3  when we've been before the court or the magistrate when clients

4  may have an issue with substance abuse, the reality is is that

5  the court can fashion conditions that would address those

6  issues.

7        THE COURT:  I'm not concerned about --

8        MS. RUBIN:  Well -- and I understand the Court --

9        THE COURT:  -- substance abuse.  I'm concerned about

10 whether he lied.  And that's --

11       MS. RUBIN:  Then, Your Honor, I guess we'll have to be

12 back before the Court to address that issue because there's

13 nothing that I --

14       THE COURT:  Well, it depends on what evidence you come

15 up with.

16       MS. RUBIN:  But there's nothing that I have today.

17       THE COURT:  I know.  And that's why I started off with

18 this so that you wouldn't argue about a lot of things without

19 knowing what my concern is.

20     I'm not so concerned about him using marijuana.  I think

21 that probably can be addressed.  I am concerned that he lied.

22 And the whole basis of releasing somebody with this kind of

23 serious offense is for me to believe somehow that these

24 conditions are going to satisfy the danger to the community, and

25 I'm not satisfied with that if he lied to the probation

1  department.

2       MS. RUBIN:  Then I guess we'll have to readdress this

3  issue because I don't know that it's -- it may be pointless for

4  me to go and present the rest of my argument if the Court is

5  going to determine that based on that statement to probation

6  that that -- the determination that the Court is going to

7  make -- that they're not going to release him based on that.

8       THE COURT:  Well, I'll listen to whatever argument you

9  want; but I wanted you to have -- I listened to the argument you

10  made in front of the magistrate, and it had to do with this; and

11  there was no evidence to support that.  And so I take the

12  probation report which -- at the beginning of that hearing, you

13  said you had no objections to it; but I don't hold you to that.

14  I mean, I think you can object to the drug test; but there's

15  just no evidence to do that right now.

16       MS. RUBIN:  I guess I just -- I mean, I should have

17  objected.  But I guess that I didn't realize that that was going

18  to be such a --

19       THE COURT:  I'm not holding you to that.  I'm assuming

20  you objected to it.

21       MS. RUBIN:  Yeah.  Well, we objected before the

22  magistrate; so I think our position remains the same.

23       THE COURT:  I understand.

24       MS. RUBIN:  I mean, I think it's pointless for us to

25  go forward with the rest of our argument, though, because

obviously the Court's -- one of the major concerns, though,
today is the fact that there may have been a misrepresentation,
albeit that we object to that.  But the Court feels there was a
misrepresentation to the probation office.  So I think that for
us to go further -- I think the Court has already made it clear
the Court is probably going to deny our appeal at this point
until we are able to provide enough information to the Court to
either suggest that it's not feasible for us to test the sample
that was provided and the results that this -- that this office
may or may not have -- you know -- on other tests, or that we
are able to obtain some information maybe from his employers to
show the Court that he has had negative tests in the past.  I
mean, we've obviously got to be able to have time to do that;
and we're not prepared to do that today.

       THE COURT:  I understand that.

       MS. RUBIN:  So I think that for me to go and discuss
all the other issues I was going to discuss seems pointless at
this point --

       THE COURT:  All right.

       MS. RUBIN:  -- because I think the Court has already
made it clear which way the Court's going to rule.

       THE COURT:  All right.

       MS. RUBIN:  I mean, I don't know.  I don't want to --
I don't want to put words in the Court's mouth.  But I don't
want to -- I don't want to waste your time or my time presenting

1 an argument if --

2      THE COURT:  I've told you what concerns me.  And if

3 you want to address those things that concern me, or anything

4 else, you can.  But I've explained, by and large, going through

5 the statutory items, which I've done with you before, and I

6 usually find some way to release somebody if I think it's

7 appropriate, what is leading me not to do that.  And there's

8 nothing you've said except, well, I can't test it, that rebuts

9 that; and I'm not satisfied with that.

10      MS. RUBIN:  Well, then, I think that we need more

11 time, Your Honor --

12      THE COURT:  All right.

13      MS. RUBIN:  -- because I think it's pointless to go

14 forward.

15      THE COURT:  Okay.  I've already said it, but the

16 nature and circumstances of the offense have been explained, and

17 the weight of the evidence.

18      The history and characteristics of the defendant -- he has

19 significant family ties, it appears, to Michigan.  And I have no

20 reason, other than this particular offense, to conclude that he

21 has any problems with his character or a physical or a mental

22 condition, or criminal history.  And I don't have any

23 information that he hasn't appeared at prior court proceedings.

24 But I do have -- what to me is significant is what I believe is

25 an indication that he lied about drug use.  And I do believe I

could address drug use adequately, but I can't -- part of
releasing somebody is believing them and believing that they're
going to be truthful in what they say to the Court and
otherwise, and I don't have that perception.  And I think that
the community is endangered by someone who has committed this
type of offense and that, even after being advised that law
enforcement was aware of what he had done, continued to try to
have contact with the victim by phone or e-mail.  And I am
concerned -- I've focused on the drug test.  And I am not
deciding because if I was convinced by the defense that I should
disregard that and then I just had the plan that has been set
forth, I would have a lot of concern in releasing him to a place
where there are two children.  And if I was going to do that, I
would probably want to hear from the mother.  I'd be glad to do
it by video conferencing.

So if you're going to contest the drug testing, I'm just
trying to tell you that even if I didn't have that, these
allegations that appear to go from 2005 into 2007 would cause me
concern about having him around young children.  So I'd have to
satisfy myself in some way that I wasn't putting those children
in danger or any other children in danger.  It looks like
there's a school within two-tenths of a mile, so I'd want to get
a better record on that.

MS. RUBIN:  May I just inquire as to that issue that
the Court just raised --

1        THE COURT:  Sure.

2        MS. RUBIN:  -- just to save some resources?

3    With the Court being concerned about the issue of

4 Mr. Shelly being released to a residence with two children, if

5 we are able to provide probation with a different residence,

6 where there would be no children, would the Court go ahead and

7 permit probation to ask the Eastern District of Michigan to do a

8 home check on that residence?  Because I'm afraid that what

9 we're going to get into is that if the Court wants another

10 residence, then we have to wait for the Court to ask probation,

11 then probation asks Michigan to do the home check.  So if we

12 provide an address to probation, would the Court go ahead and

13 recommend to probation to allow the Eastern District of Michigan

14 to go ahead and do a home check?  Because that --

15        THE COURT:  Why don't you bring that information to

16 me --

17        MS. RUBIN:  Okay.

18        THE COURT:  -- and I'll -- I'd be glad to authorize

19 probation to do something.

20        MS. RUBIN:  Because I know that that can take a period

21 of time as well.

22        THE COURT:  That -- you know.  If you get another

23 location, tell probation about it.  And tell me about it --

24        MS. RUBIN:  Okay.

25        THE COURT:  -- so I know what's happening,

Mr. Kennicutt. And then it's all right with me if you
investigate it. But I've gone over what my concerns are. So I
would deny this, and it's immediately appealable. And I think
there's a sufficient record if you want to do that. All right.

    Anything else?

        MS. RUBIN: We have one other issue. Yes.

        THE COURT: All right.

        MS. RUBIN: Well, it's a pretrial conference. So --
Mr. Peven is actually the attorney of record on this case. But
after speaking with Mr. Peven, we would ask the Court for more
time. We've been very, very focused, of course, on the bail
hearing.

    There is a pretty large amount of discovery. We've not had
an opportunity to review the computer and the hard drive. We
have discussed that with Ms. Lister. We're going to file a
joint stipulation to the Court which would allow Mr. Shelly's
team at the Federal Defenders to be able to review that
information. And so at this time, Your Honor, we would ask for
a continuance. We believe that it's necessary in order to
effectively represent him. It's in the interests of justice.
And probably -- I would -- I would think that somewhere between
90 and 120 days would be sufficient, Your Honor.

        THE COURT: Ms. Lister?

        MS. LISTER: I've already advised Ms. Rubin I have no
objection, Your Honor.

1        THE COURT:  Has the victim been advised?

2        MS. LISTER:  No.  I just found out today --

3        THE COURT:  I believe that under -- I think I have

4   to -- that has to be done.

5        MS. LISTER:  That's correct, Your Honor.  We'll reach

6   out to the victim today.

7        THE COURT:  Would you file something?

8        MS. LISTER:  Yes, Your Honor.

9        THE COURT:  Well, I'm going to find that even if the

10  victim objects that I would have to enter a continuance based

11  upon the representations made that the case is not ready.

12      Do you have a date out there, Ms. Fox, 90 to 120 days?

13       THE COURTROOM DEPUTY:  We could set trial for

14  February 22nd and then another pretrial conference on

15  February 3rd at 9:30.

16       THE COURT:  Is that all right?

17       MS. RUBIN:  That's fine with us, Your Honor.

18       MS. LISTER:  Yes, Your Honor.

19       THE COURT:  If the victim is someone that wants this

20  case resolved and objects to continuances, I need to know that.

21  And Ms. Rubin should know that because it would affect my

22  response to any other motion for a continuance.  So -- I mean,

23  at this point, I would expect to try it on the 22nd of February,

24  absent some other showing.  And, of course, if the victim has --

25  they have a right to be involved in this process -- has any

1  position on that trial date and any other continuances, I want

2  to know that.

3          MS. LISTER:  Your Honor, as I said, Ms. Rubin just

4  told me this morning that she intended to ask for a continuance.

5  So we will immediately reach out for the victim.  I'll file a

6  motion with -- or -- a response with the Court that the victim

7  either does or does not have an objection to the continuance.

8          THE COURT:  All right.

9          MS. LISTER:  Is that sufficient?

10         THE COURT:  Yes.  I just think -- I think I'm required

11  to do that.  Something needs to be in the record, so --

12         MS. LISTER:  You are.  And I appreciate you

13  recognizing that, Your Honor.

14         THE COURT:  All right.

15         MS. LISTER:  Your Honor, just one other point; and

16  that is if this comes to the Court again about if the defendant

17  was to provide a different residence without any children, the

18  government would still object to release.

19         THE COURT:  I know.

20         MS. LISTER:  Well, and --

21         THE COURT:  I didn't say what I would do.  I just -- I

22  would have to have a hearing about that.  So --

23         MS. LISTER:  All I'm saying, Your Honor, is his method

24  of operation is not to molest a child in his house or his state.

25  He goes on line and misrepresents himself, and he did that as

1   late as January of 2008.

2           THE COURT:  What I'm saying, Ms. Lister, is I'll hear

3   all that if it's brought back to me.  But I'm going to forget

4   what you said now.  I mean -- in other words, it's --

5           MS. LISTER:  All right.

6           THE COURT:  I've denied it.  And this matter won't be

7   in my head unless you file another motion to hear it.  And

8   normally, the way we do things is if there's going to be new

9   evidence, which I've said -- I'm denying this, so you'd file

10  another motion.  It would be heard by the magistrate, and then I

11  would hear the appeal.  I want to think about whether there's

12  any institutional reason why I should do one or the other.  In

13  other words, we try to make it so that the magistrate hears

14  everything and we don't have double hearings -- you know --

15  where there's one hearing on one record and one on another.

16  Here, we haven't, except to the extent we heard the brief

17  testimony.  So it may be better for me just to hear the whole

18  thing, but I'm going to think about that.  So if you file

19  another motion, I'm then going to have to consider that.  But --

20  all right.

21      Anything further?

22          MS. RUBIN:  Just so you know, Mr. Shelly does waive

23  his right to a speedy trial.  I know that the Court didn't have

24  an opportunity to discuss that with him, but I just want to let

25  you know we've discussed that.

1          THE COURT:  Did you understand all this, Mr. Shelly?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  I should have discussed this with you, and

4   I was responding to other things.  But you have a right to a

5   speedy trial.  What that means is that ordinarily, we'd try you

6   within about 70 days of when you were arrested.  And I'm sure

7   that the Spokane County Jail is a very uncomfortable place for

8   you to be, and so you have an interest in getting the case

9   resolved as fast as you can.  But you also have an interest in

10  having your lawyer ready to try it.  So the continuance then

11  means that you're not going to be tried within the time set by

12  the Speedy Trial Act because I have to exclude that time in

13  order to give your lawyer time to be prepared.  Do you have any

14  objection to that?

15         THE DEFENDANT:  No, Your Honor.

16         THE COURT:  Well, I'm going to find that the public

17  and the defendant's interest in a speedy trial are outweighed by

18  the defendant's interest in being properly prepared for trial

19  and exclude the time from the current trial date to the new

20  trial date, finding the ends of justice require that.

21      Anything else, Ms. Fox?

22         THE COURTROOM DEPUTY:  No, Your Honor.

23         THE COURT:  Our pretrial date is what?

24         THE COURTROOM DEPUTY:  Is now February 3rd.

25         THE COURT:  If you're going to file any motions, file

1  them by the first week of January.

2       Is that enough time, Ms. Rubin?

3            MS. RUBIN:  I believe so, Your Honor.  I believe that

4  all of the discovery is actually available at the FBI.  So I

5  don't think there's an issue of having to wait for any forensic

6  analysis.

7            THE COURT:  Would you set the time there, Ms. Fox --

8  the date?

9            THE COURTROOM DEPUTY:  File them by Friday,

10 January 8th.

11           THE COURT:  All right.  Okay.  Court's in recess.

12      (The proceedings recessed at 10:40 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E


I, DEBRA KINNEY CLARK, do hereby certify:

That I am an Official Court Reporter for the United States District Court at the Eastern District of Washington;

That the foregoing proceedings were taken on the date and at the time and place as shown on page 1 hereto; and

That the foregoing proceedings are a full, true and accurate transcription of the requested proceedings, duly transcribed by me or under my direction.

I do further certify that I am not a relative of, employee of, or counsel for any of said parties, or otherwise interested in the event of said proceedings.

DATED this 14th day of October, 2009.




                                    /s/Debra Kinney Clark

                                    Official Court Reporter
                                    United States District Court
                                    Eastern District of Washington