```
 1                     UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF WASHINGTON
 2

 3  UNITED STATES OF AMERICA,       )
                                    )
 4            Plaintiff,            )   No. 09-CR-089-RHW
                                    )   November 18, 2010
 5  vs.                             )   Spokane, Washington
                                    )
 6  TIMOTHY A. SHELLY,              )   Transcript of:
                                    )   Sentencing Hearing
 7            Defendant.            )
                                    )
 8

 9              BEFORE THE HONORABLE ROBERT H. WHALEY
                  SENIOR UNITED STATES DISTRICT JUDGE
10

11  APPEARANCES:

12  For the Plaintiff:          Stephanie J. Lister
                                Assistant United States Attorney
13                              P.O. Box 1494
                                Spokane, WA   99210-1494
14

15  For the Defendant:          Amy H. Rubin
                                Federal Defenders of Eastern
16                              Washington and Idaho
                                North 10 Post, Suite 700
17                              Spokane, WA   99201

18

19

20

21
    Official Court Reporter:    Debra Kinney Clark, RPR, CSR
22                              United States District Courthouse
                                P.O. Box 700
23                              Spokane, WA 99210
                                (509) 458-3433
24
    Proceedings reported by mechanical stenography; transcript
25  produced by computer-aided transcription.
```

1    (November 18, 2010; 11:30 a.m.)

2    THE COURTROOM DEPUTY:  We have <u>United States of
3 America v. Timothy Shelly</u>, Case No. CR09-089.  Time set for
4 sentencing hearing.

5    THE COURT:  Let me see if I'm correct on where we are.
6 We have a plea agreement that asks the Court to sentence to
7 12 years.  Either party can withdraw if I don't.  I'm going to
8 sentence to 12 years in accordance with the agreement.

9    It seems that there's an agreement between the parties as
10 to the terms of supervised release.  So the only thing I
11 understand that needs to be argued is the term of supervised
12 release, and the government is asking for life and the defense
13 is asking for ten years.  Did I summarize that correctly?

14    MS. RUBIN:  Yes, Your Honor.

15    THE COURT:  Okay.  So I don't need to hear anything
16 about the sentence.  I'll go along with the plea agreement.  So
17 let me just hear about the supervised release.  I doubt there's
18 much to say.  You want as long as you can get, and you think ten
19 years is appropriate.  But -- and I'll hear from you.  I'm not
20 trying to cut you off.

21    MS. LISTER:  Your Honor, I just think that this is a
22 particularly egregious case because the defendant misrepresented
23 who he was, enticed a young girl to talk to him about sex, and
24 then actually traveled here to the Eastern District of
25 Washington to have sex with her.

1  I think what's also difficult in this case is that after
2 the little girl had said to him -- you know -- that the cops
3 knew about this, he still continued his activity.  So he doesn't
4 seem to be someone who is deterred, and that's a concern.  So I
5 think that the safest course is a life term of supervised
6 release because the risk is that he will do this again and that
7 another child will be victimized.  And, of course, once a child
8 is victimized, that stays with them for the rest of their life.
9 And I think that in this case, his conduct should be something
10 that is supervised for the rest of his life.
11          THE COURT:  All right.  Come on up, Mr. Shelly and
12 Ms. Rubin.
13          MS. RUBIN:  Good morning.
14          THE COURT:  Good morning.
15          MS. RUBIN:  Your Honor, just for the record, we have
16 reviewed the pre-sentence investigation report in this case.  We
17 have no objection.  We did provide the Court, as well as all the
18 parties, a copy of a video that was prepared by Mr. Peven, in my
19 office, as well as Mr. Caballero.  They interviewed Mr. Shelly's
20 sisters and met with his wife while they were able to travel to
21 Michigan.  In addition, we did provide a letter that was
22 submitted by Mr. Shelly's wife.  So I hope the Court was able
23 to -- oh -- and plus the report by Dr. Wert.
24     Your Honor, this is a very difficult case.  It's difficult
25 for a number of reasons.  There is no minimizing the conduct in

this case, and Mr. Shelly would be the first to tell you that.

Certainly, I think that -- in allowing us to provide the Court with the video, I think it gives some indication as to Mr. Shelly's upbringing, some of the things he went through as a child, and some of the things he continued going through as an adult. One thing that is very clear with Mr. Shelly is the support and love that he has from his sisters and his family. And that has continued from the moment of his arrest and will continue while he serves out a very lengthy sentence that this Court will impose.

It has not been an easy year and a half for Mr. Shelly because, of course, as this Court knows, this case started long ago. The allegations and the behavior started in 2005, and I believe by Labor Day or November, where everything had happened by then, and then, of course, the investigation ensued. It took about four years for this case to come over to the Eastern District of Washington. And during that time, it was not an easy time for Mr. Shelly, always wondering: Is this the day that someone is going to arrest me? No one has come to talk to me about this case. No one has interviewed me about this case. So, in essence, for Mr. Shelly, this case has been going on for almost six years.

He has spent the last year and a half in Spokane County Jail, and I think he would tell you that there are some things that have happened to him over the last year and a half that

1  have almost been a blessing in disguise.  He has actually been
2  able to control his diabetes.  Spokane County Jail has been
3  wonderful in their treatment of his diabetes.  But spending
4  time, especially a year and a half, in a county jail is not easy
5  for anyone.  Spokane County Jail has a very lengthy lockdown
6  situation that they've been going through for a number of
7  months.  Mr. Shelly has also been very far from his family, has
8  not been able to have visits the way other people who are from
9  this area would have that opportunity.  So the last year and a
10 half has really provided him with time to think about this case,
11 think about the future, what goals he has, and what he intends
12 to do to make sure that this never happens.
13      Although this case is egregious, and there is no dispute
14 about that, what is interesting about this case, and I think
15 which Dr. Wert presents to in his report, is the fact that
16 Mr. Shelly really presents a low risk of recidivism.  This is
17 not a man who was looking at child pornography on a daily basis.
18 This is not someone who was downloading child pornography.  He
19 met a young woman.  And albeit a horrible, horrible decision to
20 engage in a relationship with this person, he met her on line in
21 an adult chat room.  And they met; and shortly after meeting, he
22 did indicate -- you know -- she knew of his age.  This was not a
23 situation where he continued to troll websites that had -- you
24 know -- young victims on it.  He met her in an adult chat room.
25 He was looking to meet people on line.  He was not looking to

meet girls that were 12, 13 on line. He was looking for relationships on line. It was a horrible decision. But I think when you look at Mr. Shelly, you look at who he is, you look at his prior relationships, I think what was evident at that time was this was a man who was -- first of all, he's very, very shy. I know it's going to be difficult for him to address the Court because he is so shy. He doesn't like public speaking, and I know that's very hard for him. He did not engage in many serious relationships. He met a woman. They married. But their marriage was basically a marriage between friends. I think that the intimacy was gone shortly after their marriage. They have remained good friends and continue to love one another. But Mr. Shelly was looking to engage in a relationship. And, frankly, when you are shy, when you are someone who isn't able to meet people very easily, the computer is almost a safe place. And so he began to meet people on line because, on line, he didn't have to be shy. He could be himself, and he wasn't going to be judged. And as I said, he met this young woman. And it was a horrible, horrible decision; a lapse of judgment I know that he regrets every single day.

    Now, we have many clients that come before this Court; and I know this Court has often indicated that although people say they're sorry, it's probably more that they're sorry they got caught. But Mr. Shelly has been living with this case for six years. And I think for him, it's almost a relief to be able to

1  resolve this case, to be able to move forward with his life.
2      And moving forward with his life, we're talking 12 years
3  or -- you know -- now what may be ten and a half by the time you
4  figure good time and the time he's served -- ten years in
5  custody. And we're asking for ten years of supervision. And
6  when you consider all the time that this case has been ongoing,
7  it's going to have lasted him almost a quarter of a century --
8  25 years by the time all is said and done, if the Court follows
9  our recommendation.
10     I would certainly understand the Court's perspective and
11 certainly the government's perspective if this was a man who had
12 continued in the behavior between the time that the computer was
13 turned over to authorities and the time that he was ultimately
14 arrested, but nothing happened. There's no indication that he
15 was ever involved in anything else like this. It happened one
16 time. He learned his lesson. And I certainly think that the
17 four years between at the time of the computer being turned
18 over, knowing that authorities had this information, knowing
19 that there had been, obviously, interviews with the victim, and
20 between his arrest I think are just very indicative of the fact
21 that this man can change. He has already demonstrated the
22 ability to rehabilitate, to be deterred. In ten years, plus the
23 time he serves in prison, he is going to receive an exorbitant
24 amount of treatment. I would find it highly unlikely he would
25 not receive treatment in prison because, of course, with such a

1  lengthy sentence, he will have the ability to qualify for
2  whatever treatment BOP deems appropriate and to probably
3  complete it within a very -- I mean, probably short -- long
4  before he has completed his sentence.  And then he will, of
5  course, have treatment as recommended by the probation office
6  with regard to his conditions of release as a part of his
7  supervised release.  And so, frankly, in 20 years, I think that
8  it would be very, very clear whether or not he is a risk of
9  reoffending, which I think he's already demonstrated he is not.
10         The one thing that I will note for the record that's been
11 very -- just, I think, inspiring with Mr. Shelly is that
12 although the year and a half has been extremely difficult for
13 him, although it has been very hard to be so far away from his
14 family, I have never, ever, ever, ever had a conversation or met
15 with Mr. Shelly when he is not just completely upbeat.  He
16 always has accepted responsibility for his actions in this case;
17 and he has always been ready to move forward with his life,
18 knowing that he has a significant amount of treatment ahead of
19 him.
20         There is not one day that has gone by that he has not felt
21 just remorse and sadness for the damage and the hurt that he has
22 caused the victim, to her family, to his family.  But I think
23 what's important is that you can do your time two ways.  You can
24 go in to do your time and just treat it as dead time, you're not
25 going to take advantage of anything, you're going to sit there

and be angry with the system, or you can do your time the way Mr. Shelly intends to do his time, which is to say: Hey, look. I have this opportunity ahead of me. I'm going to take advantage of every single thing that the BOP has to offer because, at the end of this, I am going to come out a better person. I am going to show everybody that I can succeed. And I'm going to be successful because I'm going to do what it takes to move forward with my life and put this matter behind me and never repeat this type of behavior again.

We cannot change the past. We cannot change the damage that has been done. And I assure you that Mr. Shelly -- if he could apologize to the victim and to her family in court today, he absolutely would. But he feels huge amounts of regret and huge amounts of remorse. And that is a sincere and heartfelt feeling that he has had since the moment I met him. We cannot change the past. But I can assure this Court that he will use the next ten and a half years to change his future. And I assure this Court that he will use whatever time on supervised release that this Court deems appropriate to continue making strides in his life, to continue being a better person, because I believe that he has the qualities to do that. I believe he's already demonstrated that. And I believe that ten years is sufficient for a situation like we are faced with today.

        THE COURT: Anything you'd like to say, Mr. Shelly?

        THE DEFENDANT: Yes, Your Honor. There's nothing to

1  excuse the position that I find myself in today.  I've been in
2  custody for over a year, and there's not one day that has passed
3  that I do not think about what I have done and how remorseful I
4  am for my action.  I cannot change what has happened, but I
5  assure this Court that it will never happen again.
6      The Court has had an opportunity to see a bit about my
7  background, so I will not repeat what the Court has already
8  heard.  I was never a social person, nor was I a person who ever
9  had that many relationships.  When my marriage ended, I found
10 myself lonely, looking for friendships, with the possibility of
11 relationships.  I am shy and have always shied away from social
12 settings.
13     The computer opened up a whole new world for me.  I met
14 people from all over, and I felt like I had friends.  No one on
15 the Internet judged me, and I could be myself.
16     When I met the victim on the Internet, it was happenstance.
17 I never once looked for younger girls.  I met the victim, and we
18 became friends.  I understand why this relationship was wrong.
19 But at the time, I was lonely; and we cared about each other.
20 It was a horrible lapse of judgment, and I know this.  I can
21 only imagine what she and her family have gone through, and that
22 is something I will live with for the rest of my life.  I am so
23 sorry for what I have put the victim through, her family
24 through, and my family through.
25     There are consequences for my actions, and I am prepared

for the sentence this Court will impose.  I ask the Court to follow the plea agreement, and I also ask this Court to consider ten years of release.  I will not ever reoffend.  And I feel that what speaks the strongest to this is the fact of the four years between the police taking my computer and when I was arrested.  I give the Court my word that I will follow every condition and successfully complete supervision.  I plan to take every opportunity, treatment, employment, and classes in prison to better myself so I can live a successful life upon my release.

THE COURT:  Did you go over the pre-sentence report with Ms. Rubin?

THE DEFENDANT:  Yes, I did, Your Honor.

THE COURT:  Did you have any other changes or additions you wanted to make?

THE DEFENDANT:  No.  No, sir.

MS. RUBIN:  Your Honor -- and one thing I forgot to mention is that, number one, we would ask the Court to recommend a facility called Milan.  It's about 45 minutes from Detroit.

THE COURT:  How do you spell that?

MS. RUBIN:  M-i-l-a-n.  That would be the closest facility to his family.  And obviously, the BOP will determine whether he's eligible.  I don't know at this point.  But that would be the closest facility.  And, second, if the Court would be willing to recommend the RDAP program as well.  There are

1  obviously some indications in the PSR with regard to substance
2  abuse. And I think that Mr. Shelly could certainly benefit from
3  that as well in prison.
4         THE COURT: Mr. Shelly, the only thing that's really
5  contested today is how long to put you on supervised release.
6  I'm going to put you on lifetime supervised release, but I want
7  to talk to you about that.
8      I want you -- and I'm going to put a notation in the file.
9  And if I'm still here, you'll come back to me. If I'm gone to
10 my great reward, whoever took my place will have your supervised
11 release. And when you get pushing out to ten years of it and
12 you have no trouble, I want you to contact a lawyer or the
13 probation office and tell them that I said that you should come
14 back before the Court to see if it should be reduced in length
15 because it's a great administrative burden on the government to
16 have somebody on supervised release for life. And it's
17 certainly justified if the record justifies it, but I don't
18 know -- if you've successfully gone through up to ten years, it
19 would be my belief that I would look at the record then; and if
20 I didn't see anything that surprised me, I would probably
21 terminate you early.
22     So when you get out to close to ten years of your
23 supervised release, there will be a notation in my court file,
24 and there should be one in Ms. Rubin's file and in the probation
25 file, that the Court asked you -- I can't schedule it today,

1  obviously.  So it will be up to you to do that.  But this
2  record -- I'll have Ms. Clark type up my remarks and give it to
3  Ms. Rubin and the probation office and then my file.  And
4  between those different people, someone ought to be able to come
5  up and remember what I said today.  And what I'm saying is that
6  your crime is sufficient for me -- there was a victim.  I don't
7  know if there are any others or not.  I'm not worried about it
8  because it's an agreed sentence, and I'm not trying to judge
9  that.  But 13-year-old girls and people your age that -- there's
10 just not much excuse for it, and it is dangerous.  So I don't
11 mind you being subject to restrictions for your life if they're
12 necessary.  But I also think if you make it through ten years
13 and you have not had anything happen in that ten years that
14 raised any red flags about continued supervision, I would
15 consider an early release at the ten-year point.  So that will
16 be in the record, and then you can take advantage of that if you
17 want.
18      I'm going to impose the conditions of supervised release
19 that have been agreed to.
20      Ms. Rubin -- her remarks sound like me sometimes when I'm
21 trying to talk to somebody.  You can either go into this prison
22 system -- which is going to be difficult for you.  I mean, it's
23 just a time that you can sort of deteriorate to a point that
24 you're not much use to anything when you get out.  Or you can
25 use the time by keeping your head, thinking about this is not

1  the end. And whatever programs you can participate in, whatever
2  educational opportunities you can take advantage of, whatever
3  recreational things you can do that are healthy -- because
4  there's a lot of opportunity to waste your time and get involved
5  in worse things in prison if you want to. Unless you take a
6  positive decision not to, that's where you're going to end up.
7      If you do that, with the type of support that it sounds
8  like you've got from the people in your background, and with the
9  help of the probation department that's going to kind of
10 structure you for a while, trying to get back on your feet, and
11 using whatever tools are available then to get you back employed
12 and that sort of thing, then you've got a life to lead; and then
13 you can -- you can get this behind you. But if you don't do
14 that, if you kind of waste your time, I believe when you get
15 out, it's going to be only worse.
16     Do you have any questions?
17         THE DEFENDANT: No, Your Honor. I would agree with
18 what you've just said, though. I absolutely am looking forward
19 to putting it all behind me and taking everything as positive as
20 I can make it.
21         THE COURT: I'm going to give you just a little piece
22 of -- I mean, you're a captive audience. You couldn't escape my
23 remarks if you wanted to. But I did something that I never
24 thought I could do. I went to a competitive college, and I was
25 scared to death that I was going to flunk out. I went to an Ivy

League college.  And I bought myself a ring within the first month I was there to show that I'd gone there because I figured I'll be there about six months; and I'm the last guy they let in, and they're going to flunk me out.  I made it through, but -- and I didn't do that badly.  But I never took a language because -- you had a distribution requirement of taking a language for two years, or you could take certain other courses.  So I took the other ones.  And so I never spoke another language, and I always felt like I had let myself down by not having tried to learn another language.

When I got on the federal court, within about two weeks of sitting up here, I saw how different the community was from the one that I had known before because, in other places besides Spokane, we've had an enormous influx of people from Spanish-speaking countries that haven't learned to speak English.  So I decided to learn to speak Spanish.

My point is that from the time I started -- and I had an old brain.  I mean, I was in my fifties.  And by just doing it a little bit every day, I have learned to speak Spanish.  And I could do this proceeding in Spanish.  I'd make some mistakes, but I could do it.  And I could live in a Spanish-speaking country, and I think I could get along.

You've got an opportunity to -- you've got almost ten years.  You're going to be around lots of people with lots of different languages.  There may be some people there that speak

Russian or Chinese or Vietnamese. There are certainly going to be Hispanics. One thing you could do is just try to learn to speak another language. It would keep your brain agile. It requires you to use processes that you don't use normally. They even say learning a new language helps people who might get Alzheimer's. It's just one small thing you could do. I mean, you could take up trying to develop knowledge about the solar system or something. There's books available -- but something that keeps you from just vegetating. And I say all that because your sentence is long enough that you will vegetate if you don't actively decide not to.

    Court's in recess.

        THE COURTROOM DEPUTY: There's the fine and the special penalty assessment.

        THE COURT: I'm going to waive the fine, and I'm going to impose the $200 special penalty assessment.

        MS. LISTER: And the government moves to dismiss the count of production, Your Honor.

        THE COURT: All right.

        MS. RUBIN: Just two other things, Your Honor. If he's not eligible for --

        THE COURT: You're still not through?

        MS. RUBIN: I'm still not through.

        THE COURT: Okay.

        MS. RUBIN: You know, I've got a limited time to talk.

1  As of January, I've got three months off, so --
2      As far as the placement, if he's not eligible for Milan,
3  could the Court put something in the judgment that says as close
4  to Detroit, Michigan, as possible, since that's where his home
5  is?  And then, second of all, would the probation officer here
6  be willing to forward the Court's notes to the probation office
7  in Michigan?  So that way, his supervising probation officer
8  would be notified that within -- you know -- within the ten-year
9  period, if he's doing well, he would be able to --
10             THE COURT:  I might let you do that.
11             MS. RUBIN:  I can do that.  I'm happy to do that.
12             THE COURT:  Okay.
13             MS. RUBIN:  All right.
14             MS. LISTER:  Your Honor, we'd ask that you order the
15  forfeiture pursuant to the plea agreement.
16             THE COURT:  All right.  So be it.
17             MS. RUBIN:  Thank you.
18             THE COURT:  Court's in recess.
19       (The proceedings recessed at 11:55 a.m.)

1  C E R T I F I C A T E

2

3     I, DEBRA KINNEY CLARK, do hereby certify:

4     That I am an Official Court Reporter for the United
5  States District Court at the Eastern District of Washington;
6     That the foregoing proceedings were taken on the date
7  and at the time and place as shown on page 1 hereto; and
8     That the foregoing proceedings are a full, true and
9  accurate transcription of the requested proceedings, duly
10 transcribed by me or under my direction.
11    I do further certify that I am not a relative of,
12 employee of, or counsel for any of said parties, or otherwise
13 interested in the event of said proceedings.
14    DATED this 29th day of November, 2010.

15

16

17

18                              /s/Debra Kinney Clark
                                _____
19                              Official Court Reporter
                                United States District Court
20                              Eastern District of Washington

21

22

23

24

25